UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.:

## CIVIL ACTION COMPLAINT

Willie McNeal, Jr.,

                     Plaintiff,

                     vs.

Hollingsworth & Vose Company;
Lorillard LLC f/k/a Lorillard Tobacco Company, a
subsidiary of Reynolds American Inc.; and
R. J. Reynolds Tobacco Company, as successor-by-
merger to Lorillard LLC f/k/a/ Lorillard Tobacco
Company,

                     Defendants.

**JURY TRIAL DEMANDED**

## CIVIL ACTION COMPLAINT

Plaintiff Willie McNeal, Jr. sues the above-named Defendants for compensatory and punitive damages and allege as follows:

### PARTIES

1.    Plaintiff Willie McNeal, Jr. is a citizen and resident of the City of Compton, County of Los Angeles, State of California.

2.    Defendant, Hollingsworth & Vose Company, was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, Hollingsworth & Vose Company was a manufacturer of asbestos-containing Crocidolite paper used in Kent Cigarettes. Hollingsworth & Vose Company has and does business in the State of North Carolina.

3.    Defendant, Lorillard LLC f/k/a Lorillard Tobacco Company, a subsidiary of Reynolds American Inc., was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina. The members of the "LLC" who

1

comprise Lorillard LLC f/k/a Lorillard Tobacco Company, a subsidiary of Reynolds American Inc., are Daniel A. Fawley, McDara P. Folan, III, Martin L. Holton, III, and Patrick Z. Messick, who reside and/or work in Winston Salem, North Carolina. At all times material hereto, Lorillard LLC f/k/a Lorillard Tobacco Company, a subsidiary of Reynolds American Inc., was a manufacturer of asbestos-containing Kent Micronite filters. Lorillard LLC f/k/a Lorillard Tobacco Company, a subsidiary of Reynolds American Inc. has and does business in the State of North Carolina.

4.     Defendant, R. J. Reynolds Tobacco Company, as successor-by-merger to Lorillard LLC f/k/a Lorillard Tobacco Company, was and is a company incorporated under the laws of the State of North Carolina with its principal place of business in North Carolina. At all times material hereto, R. J. Reynolds Tobacco Company, as successor-by-merger to Lorillard LLC f/k/a Lorillard Tobacco Company was a manufacturer of asbestos-containing Kent Micronite filters. R. J. Reynolds Tobacco Company, as successor-by-merger to Lorillard LLC f/k/a Lorillard Tobacco Company has and does business in the State of North Carolina.

5.     Plaintiff Willie McNeal, Jr. brings this action for monetary damages as a result of Plaintiff contracting an asbestos-related disease. Plaintiff Willie McNeal, Jr. was diagnosed with mesothelioma on or about January 17, 2018.

6.     Plaintiff Willie McNeal, Jr. was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a)     From approximately 1955 to 1960, Plaintiff Willie McNeal, Jr. smoked Kent cigarettes containing Kent Micronite filters while residing in Enterprise, Alabama. He was also exposed to Crocidolite Paper used in Kent cigarettes.

(b)     From approximately the early 1960's through the 1980's, Plaintiff Willie McNeal, Jr. experienced exposure to asbestos during his personal use of

asbestos-containing Johnson's Baby Powder and Old Spice talcum powder at his personal residences in Enterprise, Alabama, Florida, and in various cities in California including Salinas, Seaside, Glendale, Carson, Palms, Culver City and Pomona.

(c) From approximately 1963 to 1989, Plaintiff Willie McNeal, Jr. experienced exposure to asbestos while performing repairs and maintenance to his personal vehicles and the vehicles of family members, friends, and coworkers while residing in various cities in California including Salinas, Seaside, Glendale, Carson, Palms, Culver City and Pomona. During this time period, Plaintiff Willie McNeal, Jr. worked with and around asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products including, but not limited to, Bendix brakes supplied by Autozone, Inc., Autozone West, Inc. (individually and as successor-in-interest to Chief Auto Parts), Genuine Parts Company a/k/a NAPA, The Pep Boys - Manny Moe & Jack of California, and Pneumo Abex LLC (successor-in-interest to Abex Corporation).

7. At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said Defendants.

8. At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "Defendants' Products") either directly

3

or indirectly to Plaintiff Willie McNeal, Jr., or to such other entities so that Defendants' Products were caused to be used by Plaintiff Willie McNeal, Jr.

## JURISDICTION AND VENUE

9.　This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

10.　Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

11.　Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiff. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

12.　Plaintiff has satisfied all conditions precedent to the filing of this action.

13.　All of the named Defendants listed on the caption are foreign or domestic corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina Courts pursuant to the North Carolina Long-Arm Statute and the Federal Rules of Civil Procedure. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of Defendants' Products which are or in the past were sold, distributed, and used in North Carolina. As mentioned above, Plaintiff Willie McNeal, Jr. was exposed to Defendants' Products at his personal residences and while residing in

4

Enterprise, Alabama, Florida, and various cities in California including Salinas, Seaside, Glendale, Carson, Palms, Culver City, and Pomona.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

14.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

15.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of Defendants' Products.

16.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past certain Defendants' Products to be placed in the stream of interstate commerce with the result that Defendants' Products came into use by Plaintiff Willie McNeal, Jr.

17.     Throughout his personal use of Kent Micronite Filtered Cigarettes, talcum powder, and while performing repairs to his personal vehicles and the vehicles of family members, friends, and coworkers, Plaintiff Willie McNeal, Jr. was exposed to Defendants' Products which were mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants.

18.     During the course and scope of his personal use of Kent Micronite Filtered Cigarettes, talcum powder, and while performing maintenance and repairs to his personal vehicles and the vehicles of family members, friends, and coworkers, Plaintiff Willie McNeal, Jr. was exposed to Defendants' Products, which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

19.     Defendants, acting by and through their servants, agents and employees duly authorized and acting within the scope and authority of their employment had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective

5

and/or a duty to warn Plaintiff Willie McNeal, Jr. and foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care should have known.

20. Plaintiff Willie McNeal, Jr., through his personal use of Kent Micronite Filtered Cigarettes, talcum powder, and through his maintenance and repair of his personal vehicles and the vehicles of family members, friends, and coworkers, was required to work with and around Defendants' Products that were manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons personally using their products and performing maintenance and repairs to vehicles, such as Plaintiff Willie McNeal, Jr., would be required to and would come into contact with and would work in close proximity to Defendants' Products.

21. Plaintiff Willie McNeal, Jr. sustained injuries, illnesses, disabilities and/or damages caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff Willie McNeal, Jr.'s development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put Defendants' Products into the market and into the stream of interstate commerce while they knew, or in the exercise of ordinary care should have known, that Defendants' Products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Willie McNeal, Jr.'s body, lungs, respiratory system, skin, health, and general well-being. Further, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff Willie McNeal, Jr. would not know of such dangers to his health.

22. Plaintiff Willie McNeal, Jr.'s injuries, illnesses, disabilities and/or damages are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that even though the Defendants knew, or in the exercise of ordinary care should have known,

6

that Defendants' Products were deleterious, poisonous, and highly harmful to Plaintiff Willie McNeal, Jr.'s body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff Willie McNeal, Jr. of the dangerous characteristics of Defendants' Products;

(b) Failed or omitted to provide Plaintiff Willie McNeal, Jr. with the knowledge as to what would be reasonably safe and sufficient apparel, protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth these were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful Defendants' Products;

(c) Failed and omitted to place any warnings or sufficient warnings on the containers of Defendants' Products or on Defendants' Products themselves to warn personal users, handlers and bystanders of the dangers to health in coming in contact with Defendants' Products;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of personally using, handling and installing Defendants' Products;

(e) Inadequately warned, if in fact they warned at all, persons such as Plaintiff Willie McNeal, Jr., of the dangers to their health in coming in contact with and breathing asbestos fibers from Defendants' Products;

(f) Failed to recommend methods to improve the work and personal environment;

(g) Failed to develop alternative products;

7

(h)    Continued to use a known cancer-causing product, to-wit: asbestos; and

(i)    After discovering that asbestos exposure caused a progressive lung disease, Defendants did not inform Plaintiff Willie McNeal, Jr. of the need for monitoring and periodic evaluations up to and including the filing of this Complaint.

23.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. The Defendants' Products in question were defective at the time they left the control of the Defendants.

24.    Defendants were negligent and breached their duty of due care to Plaintiff Willie McNeal, Jr. by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Willie McNeal, Jr. and other foreseeable personal users and bystanders in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and distribution of Defendant's Products at issue in the stream of commerce.

25.    The hazards posed by exposure to Defendants' Products and the resulting injuries, illnesses, disabilities and/or damages to Plaintiff Willie McNeal, Jr. were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

26.    As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff Willie McNeal, Jr. developed mesothelioma as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

27.    As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

8

## SECOND CAUSE OF ACTION
## PRODUCT LIABILITY – INADEQUATE DESIGN OR FORMULATION

28.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

29.     At all material times, Defendants were engaged in the manufacture, distribution, supply, sale, assembly, production, construction, and/or specification of Defendants' Products.

30.     Defendants, acting through their agents, servants, and/or employees placed in the stream of commerce Defendants' Products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that Defendants' Products came into use by Plaintiff Willie McNeal, Jr.

31.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' Products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Willie McNeal, Jr. and foreseeable users of and bystanders to Defendants' Products of the dangers and defects which the Defendants created, knew, or within the exercise of reasonable care, should have known.

32.     Defendants acted unreasonably in designing and/or formulating Defendants' Products which were harmful to Plaintiff Willie McNeal, Jr.'s body, lungs, respiratory system, skin and health.  Defendants acted unreasonably in the following acts and/or omissions:

> (a)     Failing to adopt a practical, feasible, and otherwise reasonably alternative design that was safer, that could have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm to individuals such as Plaintiff Willie McNeal, Jr. without substantially

9

impairing the usefulness, practicality or desirability of Defendants' Products; and

(b)      Using a design that was so unreasonable that reasonable person, aware of the relevant facts, would not use or consume Defendants' Products of this design.

33.      Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' Products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' Products. Defendants' Products in question were defective at the time they left the control of the Defendants.

34.      Defendant's unreasonable acts in designing Defendants' Products manufactured, distributed, sold and specified by Defendants were a proximate cause of Plaintiff Willie McNeal, Jr.'s development of mesothelioma, and as a consequence of which through no fault of his own, he was severely injured, disabled and damaged.

35.      As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

36.      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

37.      The Defendants impliedly warranted that Defendants' Products were of good and merchantable quality and fit for their particular intended use.

38.      The implied warranty made by the Defendants that Defendants' Products were of good and merchantable quality and fit for their particular intended use was breached in that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff

Willie McNeal, Jr. personally used, or carried out his duties while working with or in the vicinity of Defendants' Products.

39. As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for their particular intended use, Plaintiff Willie McNeal, Jr. developed an illness, to-wit: mesothelioma.

40. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## WILLFUL AND WANTON CONDUCT

41. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Plaintiff Willie McNeal, Jr. and others in his position personally using, working with and/or in close proximity to Defendants' Products used and/or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Willie McNeal, Jr.'s presence as well as others, was known or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

43. The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicated that Defendants' Products were hazardous to the health and safety of Plaintiff Willie McNeal, Jr. and others in Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, therefore depriving them of the opportunity of free choice as to whether or not to expose themselves to Defendants' Products. As a result, Plaintiff Willie McNeal, Jr. was severely damaged as is set forth below.

11

44.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Willie McNeal, Jr. the knowledge with which to take necessary safety precautions, such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure.  Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

(a)     failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' Products, such rejection being motivated by the possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on Defendants' Products.

45.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Plaintiff Willie McNeal, Jr. and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of, the dangerous effect of Defendants' Products upon the body of human beings, including Plaintiff Willie McNeal, Jr. and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit dangerous Defendants' Products with full knowledge that Defendants' Products were being used and would be used in the future to the detriment of the

12

health of Plaintiff Willie McNeal, Jr. and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

46.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of users and bystanders such as Plaintiff Willie McNeal, Jr., Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of Defendants' Products.

**FIFTH CAUSE OF ACTION**
**FAILURE TO WARN**

47.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

48.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of personally using and working with Defendants' Products and of exposure to inhalable asbestos.

49.     Defendants had a pre- and post-sale duty to warn Plaintiff Willie McNeal, Jr. individually, and individuals such as Plaintiff Willie McNeal, Jr.'s, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

50.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, the Defendants failed to warn and/or inadequately warn Plaintiff Willie McNeal, Jr. of the dangers including, but not limited to:

(a)     Failing to provide adequate cautions, warnings, hazard statements and/or explanations with Defendants' Products which should have been designed

13

to provide Plaintiff Willie McNeal, Jr. knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(b) Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' Products which should have been designed to provide Plaintiff Willie McNeal, Jr. knowledge about the hazards caused by exposure to and/or dust from Defendants' Products and how to eliminate such hazards;

(c) Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards to them caused by exposure to and dust from Defendants' Products, and how to eliminate the hazards;

(d) Failing to adequately test and research Defendants' Products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Plaintiff Willie McNeal, Jr.;

(e) Failing to inspect the workplace or places in which Defendants' Products were being used to determine if the Defendants' Products being used were deleterious to the health of exposed workers and/or individuals;

(f) Failing to design, process and transport Defendants' Products in a manner intended to minimize exposure during normal working and/or personal use conditions;

(g) Failing to specify and market Defendants' Products on the express agreement that necessary engineering controls, work practices, and other

14

industrial hygiene controls would be implemented in conjunction with use of Defendants' Products after it was known or should have been known that adequate protective measures were not being implemented;

(h)     Failing to recall their defective Defendants' Products or manufacture a reasonably safer alternative;

(i)      Failing to take adequate precautions and industrial hygiene measures to protect exposed workers and/or individuals as Plaintiff Willie McNeal, Jr. when personally using, installing, repairing, or tearing out Defendants' Products including, but not limited to, providing protection from dust and fibers emanating from the personal use, installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff Willie McNeal, Jr. and workers, bystanders, and individuals in the facilities at issue that exposure to dust and fibers from Defendants' Products was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)      Otherwise failing to act reasonably under the totality of the circumstances.

51.     Defendants manufactured, processed and/or sold Defendants' Products used by Plaintiff Willie McNeal, Jr., or by workers or individuals around him, during his personal use of Kent Micronite Filtered Cigarettes, talcum powder, and maintenance of his personal vehicles and the vehicles of family members, friends, and coworkers.  Thus, Defendants had a pre- and post-sale duty to warn individuals personally using, during maintenance of their personal vehicles and the vehicles of family members, friends, and coworkers including, but not limited to, Plaintiff

15

Willie McNeal, Jr., of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' Products.

52.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' Products, Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to Defendants' Products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' Products to users and bystanders.

53.     At the time Defendants' Products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Willie McNeal, Jr. In the alternative, after Defendants' Products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that Defendants' Products posed a substantial risk of harm to a reasonably foreseeable user such as Plaintiff Willie McNeal, Jr., and failed to take reasonable steps to give adequate warnings or instructions or to take any other reasonable action under the circumstances.

54.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' Products or to provide proper instructions on the use, handling, and storage of Defendants' Products caused Plaintiff Willie McNeal, Jr. to develop mesothelioma and as a consequence of which he was injured, disabled and damaged, therefore Plaintiff hereby makes a claim for damages from the Defendants jointly and severally.

55.     As a result of the Defendants' failure to warn, Plaintiff Willie McNeal, Jr. suffered the injuries, illnesses, disabilities and/or damages hereinafter alleged.

## COMPENSATORY AND PUNITIVE DAMAGES

56. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

57. As a result of the above-alleged conduct of the Defendants, Plaintiff Willie McNeal, Jr. developed mesothelioma, as a consequence of which he has been damaged as follows:

    (a)    hospital and medical expenses incidental to Plaintiff Willie McNeal, Jr.'s illness;

    (b)    loss of earnings and future earning power of Plaintiff Willie McNeal, Jr.;

    (e)    loss of Plaintiff Willie McNeal, Jr.'s general health, strength, and vitality;

    (c)    loss of pecuniary contributions to the heirs of Plaintiff Willie McNeal, Jr.;

    (d)    loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Willie McNeal, Jr.;

    (e)    future loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Willie McNeal, Jr.;

    (f)    pain and suffering of Plaintiff Willie McNeal, Jr.;

    (g)    all other damages recoverable under said Act.

WHEREFORE, Plaintiff verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty, and willful, wanton, and malicious conduct as alleged herein proximately caused by the fault of the Defendants. Plaintiff prays for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000.00 plus interest as provided by law and the costs of this action.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 18th day of January, 2019

/s/Janet Ward Black
Janet Ward Black
NC State Bar 12869
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC 27401
336-333-2244
jwblack@wardblacklaw.com


/s/Audrey Snyder
Audrey Snyder
NC State Bar 52476
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC 27401
336-333-2244
asnyder@wardblacklaw.com

Attorneys for Plaintiff